07 CV 05525

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: PIERRE G. ARMAND (PA-3434)
Assistant United States Attorney
86 Chambers Street
New York, New York 10007

JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,                    :

                                             :      ECF Case
                  Plaintiff,                 :

        v.                                   :      07 Civ. _____

                                             :
THE YOUNG MEN'S CHRISTIAN                    :      COMPLAINT
ASSOCIATION OF GREATER NEW YORK,             :

                                             :
                  Defendant.                 :

                                             :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        The United States of America, by its attorney, Michael J. Garcia, United States

Attorney for the Southern District of New York, for its complaint alleges as follows:

        1.      This is a civil action brought by the United States of America (the "United

States") against defendant the Young Men's Christian Association of Greater New York (the

"YMCA" or "defendant") under the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "False

Claims Act").

        2.      The United States seeks to recover damages sustained by, and civil penalties

owed to, the United States as the result of defendant having knowingly presented, or in deliberate

ignorance of, or in reckless disregard of the truth presented, or caused to be presented false or

fraudulent claims to the Corporation for National and Community Service (the "Corporation")

for payment in connection with the AmeriCorps Education Awards Program ("AmeriCorps").

3.      Specifically, the YMCA falsely certified the number of service hours completed by individuals participating in the YMCA's AmeriCorps program so that these individuals could receive education awards to which they were not entitled. The YMCA also submitted false reimbursement requests to a designated agent of the Corporation and received reimbursement for expenses that were not compensable under the AmeriCorps program.

4.      Alternatively, the United States brings claims against the YMCA under the common law for fraud and payment made under mistake of fact.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. § 1331, and over all claims pursuant to 28 U.S.C. § 1345 and this Court's equitable jurisdiction.

6.      Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because the YMCA is located within this District and the acts complained of herein took place in this District.

## PARTIES

7.      Plaintiff is the United States, on behalf of the Corporation for National and Community Service, an independent federal corporation created by the National and Community Service Trust Act, 42 U.S.C. §§ 12651 et seq. The Corporation administers a number of federally-funded volunteer and community service programs, including AmeriCorps.

8.      Defendant is the Young Men's Christian Association of Greater New York, a New York not-for-profit corporation with offices located throughout the City of New York, including 333 Seventh Avenue, 15th Floor, New York, New York 10001.

2

## FACTS

### The AmeriCorps Program

9.      AmeriCorps is a community service program administered by the Corporation.
Under this program, the Corporation awards AmeriCorps grants to national and locally based
organizations, such as the YMCA, to implement educational, public safety and environmental
community service projects throughout the United States.

10.     AmeriCorps grantees recruit individuals to enroll in the AmeriCorps program and
perform approved community service activities. These individuals are known as Americorps
"members." Under the AmeriCorps program rules, members must be U.S. citizens or lawful
permanent residents who are at least 17 years old and have a high school diploma or equivalency
certificate.

11.     After completing the required term of service and satisfactorily completing the
program, AmeriCorps members may receive an education award. AmeriCorps members may
also receive living allowances, health insurance and childcare benefits during the terms of their
service.

12.     The National Service Trust (the "Trust") is an account established within the
Department of the Treasury pursuant to 42 U.S.C. § 12601 for the purpose of holding and
disbursing education awards and other benefits under the AmeriCorps program.

13.     Grantees must require their members to sign contracts stipulating, among other
things: (i) the minimum number of service hours and other program requirements necessary to
successfully complete the term of service and to be eligible for an education award; (ii)
acceptable conduct; (iii) prohibited activities; (iv) requirements under the Drug Free Workplace
Act, 41 U.S.C. §§ 701, et seq.; (vi) suspension and termination rules; and (vi) circumstances

3

under which the member may be released from service for cause. Grantees must also provide

members with training necessary to perform the tasks required under the program.

## AmeriCorps Education Awards and Living Allowances

14.    In order to be eligible for an education award, AmeriCorps members must

perform the minimum hours of service as required by the Corporation and successfully complete

all program requirements. Members may receive post-service education awards only for the first

two terms of service.

15.    The amount of an education award and the number of service hours that the

member must complete to be eligible for an award depend upon whether the member is working

full-time or part time. For example, as set forth in the Table below, full-time members must

serve at least 1,700 hours during a period of not less than nine months and not more than one

year.

| Member Title | Number of Service Hours Required | Education Award |
| --- | --- | --- |
| Full-Time | At least 1,700 | $4,725.00 |
| Half-Time | At least 900 | $2,362.50 |
| Reduced Half-Time | At least 675 | $1,800.00 |
| Quarter-Time | At least 450 | $1,250.00 |
| Minimum-Time | At least 300 | $1,000.00 |

16.    Grantees are required to maintain records showing that each member is eligible to

participate in the program and that the member has successfully completed the program

requirements.

17.    In order for a member to receive a post-service education award from the Trust,

the grantee must certify to the United States that the member is eligible to receive the post-

service education benefit. The grantee must notify the Trust on a form provided by the

Corporation when it enrolls a member for a term of service, when the member completes the

4

term, and whenever there is a change in the member's status during the term (e.g., release for compelling circumstances or suspension).

18.     Grantees may certify the number of service hours completed by AmeriCorps members on the Corporation's Web Based Reporting System ("WBRS"). WBRS permits grantees to certify electronically the number of hours that each member has worked on approved activities each month during a program term.

19.     Once the grantee has certified that the member is eligible for an education award, the Corporation issues a voucher to the member crediting him or her with a post-service education award. This award may be used to pay off qualified student loans or to pay qualified education costs. Upon application by the AmeriCorps member and the lender or educational institution, the Trust transmits the amount of the award to the lender or institution on the member's behalf.

20.     Grantees also may provide living allowances to full-time AmeriCorps members during the terms of their service. To be eligible to receive a living allowance, a member must be actively participating in the AmeriCorps program and must satisfy all membership eligibility criteria.

21.     Grantees who pay living allowances to AmeriCorps members may seek reimbursement from the Corporation. Requests for reimbursement for living allowances paid to members are paid to grantees from the Trust.

## YMCA's AmeriCorps Program

22.     The YMCA received an AmeriCorps grant from the Corporation through the New York State Office of Children and Family Services ("OCFS") to provide a tutoring program for grade school students at various public schools in New York City during the fiscal years 2001

5

through 2005. Each year, the YMCA submitted a 30-page grant application to the Corporation
and OCFS for approval setting forth a detailed budget and explaining, among other things, the
purpose and goals of the program, the duties and responsibilities of the AmeriCorps members,
and the manner in which the YMCA would administer and supervise the program. The
substance of the YMCA's applications varied little from year to year.

23.     According to the grant, YMCA members were to be placed at various public
schools participating in the program to provide tutoring services to students. During the program
year, which lasted 40 weeks, members were required to serve Monday through Friday from 9:00
a.m. to 6:00 p.m. Members were also required to serve several Saturdays throughout the year to
ensure completion of the service term within the prescribed period. Full-time members were
permitted to receive weekly living allowances of up to $265 per week.

24.     During the hours of 9:00 a.m. to 1:00 p.m., members were required to provide
classroom-based service activities, such as tutoring of individual school age students in specific
areas identified by teachers. During the extended school day portion, from 2:30 p.m. to 6:00
p.m., members were required to facilitate "enriching hands-on literacy-based activities,"
homework help, as well as "health awareness and physical fitness activities."

25.     The YMCA was required to provide management and oversight of the fiscal and
programmatic aspects of the grant. AmeriCorps members were required to be supervised by a
YMCA staff member serving as an "on-site supervisor" at each school. The Vice President of
Youth and Family Programs for the YMCA was required to provide "overall supervision for the
AmeriCorps program." The YMCA AmeriCorps Program Director, reporting directly to the
Associate Executive Director of the Vanderbilt YMCA, was responsible for the "overall

6

management" of the program. Two YMCA Branch Finance Officers were also required to provide "financial tracking and budget monitoring."

26.     The YMCA further represented in its grant applications, inter alia, that: the YMCA "has an extensive grant management and reporting infrastructure and capacity to supervise these programs effectively"; and "the vast scope of the YMCA's operations provides additional resources and the infrastructure to efficiently manage this major community initiative."

**The YMCA's False Claims**

27.     The YMCA knowingly or recklessly submitted false certifications to the Corporation of the number of service hours completed by its AmeriCorps members. Specifically, the YMCA:

a.     recorded service hours on its AmeriCorps member time sheets for work that the members did not actually perform, such as "extra hours," "double hours," and "bonus hours." YMCA then falsely certified on the Corporation's WBRS that the members had worked these hours;

b.     permitted members to record service hours on their time sheets for work that was not covered under the approved school tutoring program, such as working at YMCA "holiday camp" and "summer camp," attending "conferences," and participating in "clothing drives." The YMCA then falsely certified on the Corporation's WBRS that these were hours for approved service activities under the program;

c.     permitted members to record service hours on their time sheets for alleged "lesson planning" activities which were not covered under the program grant because, inter alia, the alleged work was not performed at the member's assigned school and was not supervised.

7

Many of the "lesson plans" that YMCA AmeriCorps members allegedly spent hours preparing related to sports, not academics. YMCA then falsely certified on the Corporation's WBRS that these were hours for approved service activities under the program; and

          d.     certified service hours for its members on the Corporation's WBRS as having been completed that were wholly unsubstantiated because (i) the certified hours appeared nowhere on the members' timesheets, or (ii) the YMCA did not maintain any timesheets at all for the members.

      28.     YMCA's awarded "bonus hours" and "double hours" to AmeriCorps members for time they did not serve as a reward if the members excelled at particular projects or wore their AmeriCorps logo shirts while serving.

      29.     At least one YMCA employee was told to identify AmeriCorps members who were not meeting the requisite number of hours for a post-service education award and then put inflated service hours for those members into the Corporation's WBRS.

      30.     At least one AmeriCorps member signed blank time sheets pursuant to the YMCA's instructions. The YMCA then falsely certified that the member was serving full-time, when she was in fact only a part-time member.

      31.     In addition, the YMCA submitted a number of reimbursement requests to OCFS, the Corporation's designated agent for reviewing such requests, for amounts it was not entitled to receive under the grant. Specifically, the YMCA sought and obtained reimbursement for living allowances paid to numerous individuals who were not entitled to receive these amounts because they were not actively participating in the YMCA's AmeriCorps program or did not otherwise meet the membership eligibility requirements.

8

32. If the Corporation had known that the YMCA's AmeriCorps members had not in fact -- as the YMCA had certified -- completed the number of service hours recorded on their time sheets and on the Corporation's WBRS, the Corporation would not have paid $196,089 to various educational and lending institutions on behalf of YMCA AmeriCorps members. Indeed, none of these AmeriCorps members was eligible to receive any portion of these awards because they had not completed the minimum service hour requirements.

33. If the Corporation had known that the YMCA had had falsely obtained living allowances for various individuals who were not in fact eligible to receive them, the Corporation would not have paid $70,360 for such living allowances to the YMCA.

## FIRST CLAIM
## Violation of the False Claims Act: Presentation of False Claims
## (31 U.S.C. § 3729(a)(1))

34. The United States incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

35. The United States seeks damages and penalties against defendant under Section 3729(a)(1) of the False Claims Act, 31 U.S.C. § 3729(a)(1).

36. As set forth above, in connection with the foregoing scheme, defendant knowingly presented, or in deliberate ignorance of, or in reckless disregard of the truth presented, or caused to be presented to an officer, employee or agent of the United States a false or fraudulent claim for payment to the YMCA and its AmeriCorps members.

37. Specifically, the YMCA falsely certified the number of service hours completed by members of its AmeriCorps program so that persons who did not qualify for post-service education benefits could receive awards to which they were not entitled. The YMCA also

9

submitted false reimbursement requests to the Corporation's agent and received reimbursement from the Trust for living allowances paid to persons who were not entitled to receive them.

38.     The United States, through the Corporation, was unaware of the foregoing circumstances and conduct of defendant, and in reliance upon defendant's false claims, paid (i) $196,089 to various educational institutions on behalf of YMCA AmeriCorps members who were not entitled to receive any education award, and (ii) $70,360 to the YMCA for living allowances that the YMCA paid to persons who were not entitled to receive such allowances.

39.     By reason of these false claims, the United States has sustained damages in the amount of $266,449 (i.e., $196,089 plus $70,360). Thus, the United States is entitled to treble damages of $799,347 (i.e., $266,449 times 3). See 31 U.S.C. § 3729(a).

40.     The United States is also entitled to mandatory civil penalties ranging from $5,500 to $11,000 per false statement or claim made by defendant YMCA. 31 U.S.C. § 3729(a)(1).

## SECOND CLAIM
### Violation of the False Claims Act:
### Making or Using a False Record or Statement
### (31 U.S.C. § 3729(a)(2))

41.     The United States incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

42.     The United States seeks relief against defendant under Section 3729(a)(2) of the False Claims Act, 31 U.S.C. § 3729(a)(2).

43.     As set forth above, in connection with the foregoing scheme, defendant knowingly presented, or in deliberate ignorance of, or in reckless disregard of the truth presented or used a false record or statement to get a false or fraudulent claim approved. Specifically, defendant knowingly, or in deliberate ignorance of, or in reckless disregard of the truth,

10

submitted (i) false certifications to the Corporation of the number of hours completed by YMCA AmeriCorps members, and (ii) false reimbursement requests to the Corporation's agent for living allowances paid to persons who were not entitled to receive them.

44.    The United States paid such false or fraudulent claims because of the acts and conduct of the defendant. As discussed above, the United States, through the Corporation, was unaware of the foregoing circumstances and conduct of defendant, and in reliance upon defendant's false claims, paid (i) $196,089 to various educational institutions on behalf of YMCA AmeriCorps members who were not entitled to receive any education award, and (ii) $70,360 to the YMCA for living allowances that the YMCA paid to persons who were not entitled to receive such allowances.

45.    By reason of these false claims, the United States has sustained damages in the amount of $266,449 (i.e., $196,089 plus $70,360). Thus, the United States is entitled to treble damages of $799,347 (i.e., $266,449 times 3). See 31 U.S.C. § 3729(a).

46.    The United States is also entitled to mandatory civil penalties ranging from $5,500 to $11,000 per false statement or claim made by defendant the YMCA.31 U.S.C. § 3729(a)(1).

## THIRD CLAIM
### Common Law Fraud

47.    The United States incorporates by reference paragraphs 1 through 33 above as fully set forth herein.

48.    Defendant made material misrepresentations of fact to the United States, with knowledge of their falsity, or with deliberate ignorance of, or in reckless disregard of, their truth, in connection with its service hour certifications and reimbursement requests submitted under the AmeriCorps program. Specifically, defendant misrepresented that (i) numerous YMCA

11

AmeriCorps members had completed service hours sufficient to receive education awards, and (ii) the YMCA was entitled to reimbursement for certain living allowances it paid to persons who were not eligible to receive such allowances.

49.     Defendant intended that the United States and the Corporation would rely upon the accuracy of the false representations referenced above.

50.     The United States, through the Corporation, paid $196,089 to YMCA AmeriCorps members and $70,360 to the YMCA in justifiable reliance upon defendant's false representations.

51.     Defendant's actions caused the United States to be damaged in an amount to be determined at trial.

## FOURTH CLAIM
### Common Law Payment Made Under Mistake of Fact

52.     The United States incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

53.     The United States seeks relief against defendant to recover monies paid under mistake of fact. The Corporation paid amounts to defendant based upon erroneous information contained in requests for reimbursement submitted by defendant to OCFS, the Corporation's designated agent.

54.     Specifically, defendant erroneously stated that it was entitled to be reimbursed $70,360 for living allowances it paid to a number of allegedly eligible YMCA AmeriCorps members. In fact, none of these persons was eligible to receive any portion of the $70,360 that the YMCA had paid to them for living allowances.

55.     This erroneous information was material to the United States' decision through the Corporation and its designated agent to pay the defendant.

12

56.    Because of the payment by mistake, defendant has received money to which it is

not entitled. By reason of the foregoing, the United States was damaged in an amount to be

determined at trial.

WHEREFORE, plaintiff, the United States, requests that judgment be entered in its favor

and against the defendant as follows:

(a)    on the First Claim for Relief (Violation of the False Claims Act:  Presentation of
False Claims) for treble the United States' damages in the amount of $799,347
(i.e., $266,449 times 3), plus an $11,000 penalty for each false claim presented
pursuant to 31 U.S.C. § 3729(a)(1);

(b)    on the Second Claim for Relief (Violation of the False Claims Act:  Making or
Using a False Record or Statement), for treble the United States' damages in the
amount of $799,347 (i.e., $266,449 times 3), plus an $11,000 penalty for each
false claim made pursuant to 31 U.S.C. § 3729(a)(2);

(c)    on the Third Claim for Relief (Common Law Fraud), in an amount to be
determined at trial, together with costs and interest;

(d)    on the Fourth Claim for Relief (Common Law Payment Made Under Mistake of
Fact), in an amount to be determined at trial, together with costs and interest; and

(e)    awarding such further relief as is proper.

Dated: New York, New York
       June 11 , 2007

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York

By:    _____

PIERRE G. ARMAND (PA-3434)
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Telephone: (212) 637-2724
Facsimile: (212) 637-2730

13